ELLIS, Judge:
Rhonda Jarrell, age 13, was adjudicated a delinquent child in need of supervision, and committed to the custody of the Department of Corrections for not more than two years, by judgment dated January 14,1980. On March 7, 1980, an application for a writ of habeas corpus was filed on her behalf, and a full hearing was held thereon on March 14,1980. The application was denied from the bench on that date, according to the transcript. No formal judgment has been signed.
According to a letter in the record, a notice of appeal was mailed to the Clerk of Court, but was not received. A copy of the motion was forwarded on April 3,1980, and received by the Clerk on April 7, 1980. It was not signed by the judge, however, and on April 25,1980, the motion for appeal was withdrawn.
An application for writ of certiorari was then filed with the Supreme Court, which, on August 21, 1980, 387 So.2d 598 transferred the application to this court. On September 8, 1980, the application was denied with the notation: “Relator has an adequate remedy by appeal. La.C.C.P. art. 3831.”
A second application for writs was made to the Supreme Court, which, on October 3, 1980, 392 So.2d 676, granted the writ, and ordered this court “to recall its writ denial and grant the writ, treating the matter as an appeal, and to decide the merits.” We assume that the Supreme Court intended for this court to decide this case despite the fact that there has been no final judgment signed, no appeal taken, and that any judgment signed would be appealable. Article 24, Code of Juvenile Procedure; Articles 1911, 2083, 2087, 3831, Code of Civil Procedure.
In compliance with that order, we recalled our denial of the writ, issued a writ of certiorari ordering the record to be sent up, and ordered that, on the lodging of the record, the matter be treated as an appeal.
The application for the writ of habeas corpus is based on the contention that the guilty plea entered by Rhonda Jarrell, on which the finding of delinquency was based, was not voluntarily and intelligently given.
The record shows that Rhonda and her nine-year-old sister were charged with attempted second-degree murder and aggravated arson, following a fire in which the *1384 mobile home where they lived was totally destroyed and their parents seriously injured. Rhonda and her sister were picked up by authorities the next day and were brought before the court on the day following, January 14, 1980.
Thomas J. Ford, Jr., a member of the staff of the Indigent Defender Office of St. Tammany Parish was named by the court to defend both Rhonda and her sister. He testified that he fully explained to Rhonda and her sister who he was and what he was doing, the nature of the charges against them; the various options available to them, the consequences of a plea of guilty and of a plea of not guilty; and of their right to remain silent. He was of the opinion that both girls fully understood what he had told them. Salvador J. Liberto, Jr., Director of the Indigent Defender Office, was present during a portion of the interview with the girls, and was of the opinion that they had been fully “Boykinized,” and that they understood what was going on.
After speaking with Rhonda and her sister, Mr. Ford then entered into a plea bargain with the prosecuting attorney, by virtue of which the girls were to plead guilty to the charge of aggravated arson, and the State would nol. pros, the charge of attempted murder.
The trial judge interrogated Rhonda, advised her of her rights, of the consequences of a plea of guilty, and of her right to remain silent. Rhonda then admitted that she had set the fire, knowing that her parents were in the trailer asleep, after which the judge accepted her guilty plea, found that she was a delinquent juvenile and in need of confinement, and committed her as aforesaid.
When it appeared that the nine-year-old sister did not fully understand the proceedings or the import of her plea of guilty, the plea was withdrawn on her behalf by Mr. Ford.
In this court, Rhonda Jarrell alleges that the proceedings leading up to the acceptance of her guilty plea and her commitment to the Department of Corrections were deficient in a number of respects.
First, she alleges that she was not adequately informed of the consequences of her plea. Specifically, she points out that the judge did not advise her of the maximum period of time, eight years, during which she could be confined. The judge did tell her that she could be confined for “a certain length of time” and that, if she were an adult she could be imprisoned for “a long, long time.”
She also complains that the judge did not explain what Louisiana Training Institute was, and what she would be doing there. At the time of the hearing Rhonda was in a juvenile detention center in Slidell. The judge told her that she would be held “in a similar place,” and that she would be going to a school “under a similar circumstance of where you are staying right now.”
The fundamental question to be decided in this case is whether the plea of guilty entered by Rhonda Jarrell is in violation of federal constitutional standards. In the case of State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), the court said:
“Accordingly, we reach the merits of the petitioner’s contention — that his plea of guilty of February 24, 1970, must be set aside, as taken in violation of the federal constitutional standards prescribed by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
“In Boykin, the United States Supreme Court held:
‘It was error, plain on the face of the record, for the trial judge to accept petitioner’s guilty plea without an affirmative showing that it was intelligent and voluntary. [395 U.S. 242, 89 S.Ct. 1711] * * * Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against *1385 compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one’s accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record. [395 U.S. 243, 89 S.Ct. 1712.]’ (Italics ours.)
“The high court further noted that the trial judge must make sure that the accused ‘has a full understanding of what the plea connotes and of its consequence’. 395 U.S. 244, 89 S.Ct. 1712. It further quoted with approval the observation that, if guilty pleas “are to be insulated from attack, the trial court is best advised to conduct an * * * examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.” 395 U.S. 244, 89 S.Ct. 1713.”
In this case, Rhonda’s court appointed counsel conferred with her for over an hour and testified that he had fully explained to her her constitutional rights, the nature of the charge against her, her right to a trial and the consequences of a guilty plea. He did not specifically testify that he told Rhonda anything relative to the maximum or minimum sentences which she might expect. He was of the opinion that Rhonda fully understood everything he told her.
After the discussion with Rhonda, counsel then entered into a plea bargain with the district attorney, under which Rhonda would plead guilty to the charge of aggravated arson and the state would enter a nolle prosequi of the charge of attempted murder.
The trial judge then determined that Rhonda was 13 years of age and in the seventh grade. The colloquy between the judge and Rhonda seems to satisfy all of the Boykin requirements, except that the permissible range of sentences was not discussed. Rhonda was only told that she could be “confined to the Louisiana Training Institute for a certain length of time,” and that L.T.I. is “a similar place” to the detention facility where she had been held after being taken into custody.
Although we think it clear from the record that both counsel and the trial judge exhibited great concern for the protection of Rhonda’s constitutional rights and for her welfare, we must hold that, in failing to disclose fully the possible consequences of a plea of guilty, they failed to meet the standards imposed by the Boykin case, supra.
It is therefore ordered that the plea of guilty entered by Rhonda Jarrell, and the sentence imposed as a consequence thereof be set aside, and the case be remanded for further proceedings, according to law.
REVERSED AND REMANDED.